United States District Court
Southern District of Texas

**ENTERED**

February 22, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

THE BAR GROUP, LLC,                    §
                                       §
              Plaintiff,               §
                                       §
VS.                                    §    CIVIL ACTION H-16-0428
                                       §
BUSINESS INTELLIGENCE ADVISORS,        §
INC.,                                  §
                                       §
              Defendants.              §

### OPINION AND ORDER OF DISMISSAL WITHOUT PREJUDICE

Pending before the Court in the above referenced cause, removed from the 112th Judicial District Court of Harris County, Texas on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a),[1] 1441, and 1446, and seeking damages for tortious interference with contract and with prospective contract and defamation *per se,* are (1) Defendant Business Intelligence Advisors, Inc.'s ("BIA's")

---

[1] The BAR Group, LLC ("TGB") is a Delaware Limited Liability Company with its principal place of business in Harris County, Texas. All of the circuit courts of appeals that have addressed the citizenship of a limited liability company for diversity purposes have concluded that "'like limited partnerships and other unincorporated associations or entities, the citizenship of an LLC is determined by the citizenship of all its members.'" *Greenville Imaging, LLC v. Washington Hosp. Corp.*, 326 Fed. Appx. 797, 798 (5th Cir. June 15, 2009)(*per curiam*), *citing Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077 (5th Cir. 2008). TGB's members are citizens of Texas, Georgia, and California.
Business Intelligence Advisors, Inc. ("BIA") is a Delaware company with its principal place of business in Boston Massachusetts.
KPMG, which is not a party here, but is the defendant in BIA's suit against it in New York, is a Delaware limited liability with its headquarters in New Jersey.

motion to dismiss for lack of personal jurisdiction and/or failure to state a claim under Federal Rules of Civil Procedure 12(b)(2) and/or 12(b)(6), or, alternatively, request for stay pending resolution of related litigation in a New York State court (instrument #8), and (2) Plaintiff The BAR Group, LLC's ("TBG's") motion for leave to file first amended complaint (#18).

### Background Facts As Alleged in the Original Petition

In its Deception Training Course through slides, live presentations, and discussion, with anecdotes from presenters, developed in part by the Central Intelligence Agency ("CIA") and the Federal Bureau of Investigation ("FBI") to train FBI Special Agents, with academic research integrated by TBG, TBG provides programs and training sessions designed to teach attendees to recognize deception by identifying deceptive behaviors.  TBG insists that the TBG Course Material is public information, neither confidential nor proprietary to TBG or any other business organization.

Two TBG principals, Robert Bettes ("Bettes") and Lee Howell ("Howell"), both former special agents of the FBI, in that capacity took the Deception Detection Training Course provided to special agents of the FBI by members of the CIA.  They subsequently were given governmental approval to commercialize privately the CIA Deception Training Course's methods and content.  In 2001 the CIA Course Authors sold that commercial entity to Defendant BIA.  Upon

information and belief, TBG states that the course was not, and is not, proprietary; it was funded by U.S. taxpayers and has always been in the public domain.  BIA then recruited Bettes, Howell, and another principal of TBG, Dennis Matko ("Matko"), to provide the deception detection training for TBG in the private sector.  While these men were employed by BIA, BIA prominently advertised that it was offering training in a course developed and used by the CIA to detect deception.

After their employment with BIA was over, Bettes, Howell and Matko joined with former CIA employees, who gave them slides and later copies of those slides prepared by these former CIA employees, to provide training to private industry organizations, separate from BIA.  A short period later Bettes, Howell, and Matko were granted the right to use the former CIA employees' Deception Detection Training Course and their slides and written materials. Furthermore TBG obtained a Foundational Interview course from the FBI and incorporated a segment, called "Active Listening," into TBG's course.  Thus TBG's Deception Training Course was composed of materials from the former CIA and/or FBI employees along with publicly available information and content from sources other than BIA.  While some TBG course materials appear very similar to BIA course materials because of the common source of publically available materials presented in the Detection Deception Course by both TBG and BIA, TBG maintains that neither the principals of TBG,

Bettes, Howell, and Matko, nor anyone associated with TBG, incorporated any BIA course material nor used any proprietary or confidential information of BIA.

BIA has not sued TBG or any of the former employees now associated with TBG, but BIA has sued KPMG, BIA's former client and TBG's present client, in New York State, after KPMG used TBG to provide its TBG Deception Detection Training Course to KPMG employees. BIA alleges that KPMG breached and continues to breach its contracts with BIA by "permitting BAR Group to provide training sessions to KPMG employees 'incorporating' Foundational Interviewing Skills Material and/or Strategic Information Collection Materials (the "BIA Course Materials") provided pursuant to those Agreements." TBG insists that BIA knows that TBG has not and does not incorporate any BIA course materials in those it provided to KPMG, that the basics of its program and its material provided to KPMG are not proprietary and confidential, but are public information, that TBG's employees learned the basics of the materials provided to KPMG through training they had received as special agents of the FBI, not from BIA, and that TBG has not at any time incorporated any BIA materials, including those alleged to be the basis of BIA's suit against KPMG.

In the instant action TBG sues BIA first for tortious

interference with contract[2] and tortious interference with prospective contract.[3]  TBG points out that at the time BIA filed its suit against KPMG, TBG was actively negotiating a new contract with KPMG to provide TBG's course to KPMG.  TBG contends that BIA's lawsuit against KPMG in New York "is a willful and transparent attempt to interfere with the existing contract and/or future contracts between TBG and KPMG and to cause damage to TBG.

TBG's second cause of action against BIA is for defamation *per*

---

[2] Under Texas law, to prevail on a claim for tortious interference with contract, the plaintiff must establish "(1) the existence of a contract subject to interference, (2) willful and intentional interference, (3) that proximately causes damage, and (4) actual damage or loss." *Engenium Solutions, Inc. v. Symphonic Technologies, Inc.*, 924 F. Supp. 2d 747, 798 (S.D. Tex. 2013).  "'To show tortious interference, a plaintiff is not required to prove intent to injure, but rather 'only that the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it.''"  *Id., quoting Amigo Broad., LP v. Spanish Broad. Sys., Inc,*, 521 F.3d 472, 489 (5th Cir. 2008).  "'To show proximate cause, a plaintiff must allege that the defendant took an active part in persuading a party to a contract to breach it.'"  *Id., quoting M-I LLC v. Stelly*, 733 F. Supp. 2d 759, 775 (S.D. Tex. 2010).  "'It is necessary that there be some act of interference or of persuading a party to breach, for example by offering better terms or other incentives, for tort liability to arise.'"  *Id., citing id.*

[3] To prevail on a claim under Texas law for tortious interference with prospective business relations or prospective contract, the plaintiff must prove that "(1) there was a reasonable probability that the parties would have entered into a contractual relationship; (2) the defendant committed a malicious and intentional act that prevented the relationship from occurring, with the purpose of harming the plaintiff; (3) the defendant lacked privilege or justification to do the act; and (4) actual harm or damage resulted from the defendant's interference."  *Steward Glass & Mirror, Inc. v. U.S. Auto Glass Discount Centers, Inc.*, 200 F.3d 307, 316 (5th Cir. 2000).

se,[4] for contacting KPMG and falsely accusing TBG and its principals, Bettes, Howell, and Matko, of improperly incorporating or otherwise using BIA's course materials and harming TBG in its business and reputation.

Because the Court's jurisdiction is the threshold issue, the Court addresses BIA's motion to dismiss first.

---

[4] "To prevail on a defamation claim under Texas law, the plaintiff must prove that the defendant (1) published a statement; (2) that defamed the plaintiff; (3) while either acting with actual malice (if the plaintiff was a public official or a public figure) or with negligence (if the plaintiff was a private individual) regarding the truth of the statement.'" *Charalambopoulos v. Grammar*, Civ. A. No. 3:14-CV-2424-D, 2015 WL 390664, *15 (N.D. Tex. Jan. 29, 2015), *citing Neely v. Wilson*, 418 S.W. 3d 52, 61 (Tex. 2013). "'A statement is defamatory if 'it tends to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial  injury or to impeach any person's honesty, integrity, virtue, or reputation.'" *Id., citing id.* "'Defamatory statements are 'published' if they are communicated orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that the third person did so understand.'" *Id., citing Austin v. Inet Techs., Inc.*, 118 S.W. 3d 491, 496 (Tex. App.--Dallas 2003, no writ). "To establish actual malice, a plaintiff must prove the defendant made a statement with 'knowledge of, or reckless disregard for, [its] falsity.'" *Id., citing Waste Management of Texas, Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W. 3d 142, 157 (Tex. 2014).
Defamation *per se* involves a statement that is so obviously hurtful to a plaintiff's reputation that the jury may presume general damages, including loss of reputation and mental anguish." *Id.* at *16, *citing Hancock v. Variyam*, 400 S.W. 3d 599,63 (Tex. 2013). '[A] statement is defamatory *per se* only if it falls within one of the following categories:  (1) imputation of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling; or (4) imputation of sexual misconduct.'" *Id., citing Memon v. Shaikh*, 401 S.W. 3d 407, 421 (Tex. App.--Houston [14th Dist.] 2013), *judgment withdrawn on other grounds*, No. 14-12-00015-CV, (Tex. App.--Houston [14th Dist.] Nov. 25, 2014).

*Standards of Review*

**Personal Jurisdiction and Rules 8, 12(b)(2), and 12(b)(6)**

A court must find that it has personal jurisdiction over that defendant before it makes any decision on the merits. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 623, n.2 (5th Cir. 1999)("Personal jurisdiction is an essential element of the jurisdiction of a district court, without which it is powerless to proceed to an adjudication.").

When a defendant files a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006), *citing Wyatt v. Kaplan*, 686 F.2d 276, 280 (5th Cir. 1982).[5]  At the pretrial stage of litigation, if the district court does not conduct a hearing on personal jurisdiction, the plaintiff need only present a *prima facie* case of personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644,

---

[5]  "Absent any dispute as to the relevant facts, the issue of whether personal jurisdiction may be exercised over a nonresident defendant is a question of law . . . ." *Ruston Gas Turbines, Inc. v. Donaldson Co.,* 9 F.3d 415, 418 (5th Cir. 1993).  Where the facts are disputed, the party seeking to invoke the court's jurisdiction bears the burden of establishing sufficient contacts with the forum state by the nonresident defendant to invoke the court's jurisdiction. *Bullion v. Gillespie*, 895 F.2d 213, 216-17 (5th Cir. 1990).

648 (5th Cir.), *cert. denied*, 513 U.S. 930 (1994); *Felch v. Transportes Lar-Mex S.A. DE CV,* 92 F.3d 320, 325 (5th Cir. 1996); *Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).   Proof by preponderance of the evidence is not required.   *Johnston*, 523 F.3d at 609.[6]

When a defendant disputes the factual bases for personal

---

[6] As the Fifth Circuit explained in *Walk Haydel & Associates, Inc. v. Coastal Power Production Co.*, 517 F.3d 235, 241-42 (5th Cir. 2008),

> Ultimately, the plaintiff must show by a preponderance of the evidence that jurisdiction is proper.  Often, the determination of whether this standard is met is resolved at trial along with the merits.  This is especially likely when the jurisdiction issue is intertwined with the merits and therefore can be determined based on jury fact findings.  In this situation it is often "preferable that [the jurisdictional] determination be made at trial, where a plaintiff may present his case in a coherent, orderly fashion and without the risk of prejudicing his case on the merits."  But this court has said that after a pretrial evidentiary hearing confined to the jurisdictional issue, where both sides have the opportunity to present their cases fully, the district court can decide whether the plaintiff has established jurisdiction by a preponderance of the evidence. [footnotes omitted]

The panel further opined, *id.* at 241.

> If the court determines that it will receive only affidavits or affidavits plus discovery materials, these very limitations dictate that a plaintiff must make only a prima facie showing of jurisdictional facts through the submitted materials in order to avoid a defendant's motion to dismiss.  Any greater burden such as proof by a preponderance of the evidence would permit a defendant to obtain a dismissal simply by controverting the facts established by a plaintiff through his own affidavit and supporting materials.

jurisdiction, the district court may consider the record before it, including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Quick Technologies, Inc. v. Sage Group PLC*, 313 F.3d 338, 344 (5th Cir. 2002)(*quoting Thompson v. Chrysler Motors Corp.*, 755 F.3d 1162, 1165 (5th Cir. 1985), *cert. denied*, 540 U.S. 814 (2003); *Kelly Law Firm, P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 762 (S.D. Tex. 2009). The court has discretion as to the type and amount of discovery it will allow, but unless there is a full and fair hearing, it should not act as a factfinder and must construe all disputed facts in favor of the plaintiff. *Walk Haydel*, 517 F.3d at 241. On a motion to dismiss under Rule 12(b)(2), uncontroverted allegations in plaintiff's complaint are taken as true, and conflicts between facts in the parties' affidavits must be resolved in plaintiff's favor for purposes of the *prima facie* case of personal jurisdiction. *Johnston*, 523 F.3d at 609; *Kelly Law Firm*, 679 F. Supp. 2d at 762; *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). Nevertheless, the court is not required to credit conclusory allegations even if they are uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

Under the federal rules, except where a federal statute provides for broader personal jurisdiction, the district court's personal jurisdiction is coterminous with that of a court of

general jurisdiction of the state in which the district court sits.
*Submersible Sys., Inc. v. Perforadora Cent.*, *S.A. de C.V.*, 249 F.3d
413, 418 (5th Cir. 2001).  *See also Wyatt v. Kaplan*, 686 F.2d 276,
279 (5th Cir. 1982)("Under the Federal Rules of Civil Procedure, a
federal district court in a diversity case may exercise personal
jurisdiction over a defendant residing outside the state in which
it sits only to the extent permitted by state law.").  A federal
court sitting in diversity may exercise personal jurisdiction over
a nonresident defendant if (1) the forum state's long-arm statute
confers personal jurisdiction over that nonresident defendant and
(2) if the exercise of personal jurisdiction satisfies due process
under the United States Constitution. *McFadin v. Gerber*, 587 F.3d
753, 759 (5th Cir. 2009), *citing Moncrief Oil Int'l, Inc. v. OAO
Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007).  The Texas long-arm
statute, Texas Civil Practice and Remedies Code §§ 17.0421-.045,[7]
extends jurisdiction to the limits of federal due process.
*Schlobohm v. Schapiro*, 784 S.W. 2d 355, 357 (Tex. 1990); *Gonzalez
v. Bank of America Ins. Servs., Inc.*, No. 11-20174, 2011 WL 6156856

---

[7] Section 17.042 provides in relevant part,

In addition to other acts that may constitute doing
business, a nonresident does business in this state if
the nonresident:  (1) contracts by mail or otherwise
with a Texas resident and either party is to perform
the contract in whole or in part in this state; (2)
commits a tort in whole or in part in this state; or
(3) recruits Texas residents, directly or through an
intermediary located in this state, for employment
inside or outside this state.

*3 (5th Cir. Dec. 12, 2011), *citing Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 385 (5th Cir. 2008).  "Because the Texas' long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  Thus a plaintiff in a diversity action in federal court in Texas need only demonstrate that (1) the defendant purposely availed himself of the benefits and protections of the forum state by establishing that the defendant had minimum contacts with the forum state, and (2) the exercise of personal jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *Alpine View Co., Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007).

Personal jurisdiction can be either specific or general jurisdiction. *Mink v. AAAA Develop., LLC.*, 190 F.3d 333, 336 (5th Cir. 1999). "Where a defendant 'has continuous and systematic general business contacts' with the forum state, the court may exercise 'general jurisdiction over any action brought against the defendant [regardless of whether the action is related to the forum contacts]." *Luv N' Care*, 438 F.3d at 469, *citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). *See also Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d

694, 717 (5th Cir. 1999)("General jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."), *cert. denied*, 531 U.S. 917 (2000). "[T]he minimum contacts inquiry is broader and more demanding when general jurisdiction is alleged, requiring a showing of substantial activities in the forum state. *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir.), *cert. denied*, 506 U.S. 867 (1992). The test is a "difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston*, 523 F.3d at 609 (discussing cases demonstrating the difficulty of meeting general jurisdiction). A court need not credit a plaintiff's conclusory jurisdictional allegations, even if they are not controverted. *Panda Brandywine Corp. v. Potomac Elec. Co.*, 253 F.3d 865, 869 (5th Cir. 2001). "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Johnston*, 523 F.3d at 610.[8]

_____

[8] In *Johnston*, the Fifth Circuit discussed how extremely difficult it is to establish general jurisdiction over a nonresident defendant. 523 F.3d at 610-11. The panel examined the Supreme Court's ruling in *Helicopteros*, 466 U.S. at 418-19, in which it found that defendant's contacts with Texas purchasing helicopters, spare parts, and accessories for more than $4 million over a six-year period from a Texas company, sending management and maintenance personnel to Texas for technical consultations and prospective pilots to Texas for training, and receiving a check for more than $5 million drawn on a Texas bank were insufficient to support personal jurisdiction. Among other

If the defendant has relatively few contacts, the court may still exercise personal jurisdiction over that party if the suit "'arises out of' or is related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 & n.8. Furthermore the Fifth Circuit has concluded that specific jurisdiction is "a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *McFadi*n, 587 F.3d at 759, *quoting Seiferth v. Helicopteros Atuneros, Inc*., 472 F.3d 266, 271 (5th Cir. 2006).

---

cases from this Circuit, *Johnston* cited *Cent. Freight Lines, Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003), in which the Fifth Circuit concluded that general jurisdiction did not exist even though the defendant regularly arranged and received interline shipments to and from Texas and sent sales people to Texas to develop business, negotiate contracts and service national accounts; *Wilson v. Belin*, 20 F.3d 644, 651 (5th Cir. 1994)("Even if [the defendant's] contacts with Texas via his short-lived malpractice insurance arrangement through a Texas law firm and his multi-year *pro bono* association with the historical society were arguably continuous, we hold that they were not substantial enough to warrant the imposition of general personal jurisdiction over him."); *Access Telecom*, 197 F.3d at 717 (in order to confer general jurisdiction it is not sufficient that a corporation do business in Texas; it must have a business presence in Texas); *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 218 (5th Cir. 2000)(holding that general jurisdiction did not exist where the defendant occasionally sold products to entities in Texas that used the defendant's products for projects in Texas and the defendant's employees made field visits to Texas between December 1992 and December 1993). *Johnston*, 523 F.3d at 610-12 (concluding that Multidata's sale of approximately $140,000 worth of goods over a five-year period to Texas customers and its employees' occasional travels to Texas to service equipment or attend trade conventions did not support general jurisdiction over Multidata).

Moreover, the Fifth Circuit has established a three-step analysis for determining whether specific jurisdiction exists: "'(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there[9]; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts[10]; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *Seiferth*, 472 F.3d at 271, *quoting Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002). The minimum contacts review is fact-intensive and no single contact is decisive; "the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court'" there.   The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or the 'unilateral activity of another party or a third person.'" *Burger*

---

[9] Purposeful availment requires a defendant to seek some benefit, advantage or profit by "availing" itself of the jurisdiction. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W. 3d 777, 785 (Tex. 2005).

[10] The litigation must also "result from the alleged injuries that 'arise out of or relate' to those activities." *Guardian Royal Exch. Assurance Ltd. v. English China Clays, P.L.C.*, 815 S.W. 2d 223, 228 (Tex. 1991), *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).   For specific jurisdiction, there "must be a substantial connection" between the nonresident defendant's contacts with the forum state and the "operative facts of the litigation." *Guardian Royal*, 815 S.W. 2d at 229-33.

-14-

*King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985); *McFadin*, 587 F.3d at 759, *citing Luv N' Care*, 438 F.3d at 470 (*citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)), and *Electrosource, Inc. v. Horizon Battery Tech., Ltd.*, 176 F.3d 867, 871-72 (5th Cir. 1999).  Thus specific jurisdiction may not be based upon the mere fortuity that a plaintiff is a Texas resident. *Santander Consumer USA, Inc. v. Shults Ford, Inc.*, Civ. A. No. 3:11-CV-614-L, 2011 WL 2601520, *4 (N.D. Tex. June 30, 2011), *citing Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986).

Once the plaintiff has established that the defendant has minimum contacts with the forum state, the burden shifts to the defendant to show that assertion of jurisdiction would be unfair. *Walk Haydel*, 517 F.3d at 245.  In determining whether the exercise of jurisdiction is fair and reasonable, the court examines five factors:  "'(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies.'" *McFadin*, 587 F.3d at 759-60, *quoting Luv N' Care*, 438 F.3d at 473. If the plaintiff fails to establish the existence of minimum contacts with the forum state, the court need not reach the question of whether personal jurisdiction would offend traditional

notions of fair play and substantial justice. *Renoir v. Hantman's Associates, Inc.*, 230 Fed. Appx. 357, 360(5th Cir. 2007).

The mere fact that a party contracted with a resident of Texas is insufficient to establish minimum contacts necessary to support personal jurisdiction. *Moncrief Oil Int'l, Inc. v. OAO Gasprom*, 481 F.3d 309, 311 (5th Cir. 2007)("Merely contracting with a resident of the forum state does not establish minimum contacts."); *Cardinal Health Solutions, Inc. v. St. Joseph Hosp. of Port Charlotte, Fla. Inc.*, 314 Fed. Appx. 744, 745 (5th Cir. 2009). Nor does the exchange of communications in the developing and performing of a contract constitute purposeful availment of the benefits and protections of the laws of Texas. *Id.; id.; Freudensprung v. Offshore Technical Services, Inc.*, 379 F.3d 327, 344 (5th Cir. 2004). "[Purchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417. Moreover jurisdiction may not be based on the fortuity of one party residing in the forum state. *McFadin*, 587 F.3d at 760. Mere foreseeability, by itself, does not create personal jurisdiction. *Moncrief Oil*, 481 F.3d at 313.

A choice of law provision may be a relevant factor for determining purposeful activity directed toward the forum state, but is not necessarily determinative, and standing alone, it is insufficient to confer jurisdiction. *Santander Consumer USA, Inc.*

*v. Shults Ford, Inc.*, 2011 WL 2601520 at *4, *citing Petty-Ray Geophysical*, 954 F.2d at 1069, and *Burger King*, 471 U.S. at 482. The court must examine the quality and nature of the defendant's activities in the forum in their totality to decide whether the defendant purposely availed itself of the privileges offered by the forum state. *Id., citing Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999).

Personal jurisdiction can be waived by an enforceable forum selection clause in which the parties consent to personal jurisdiction in a specified forum. *Burger King*, 471 U.S. at 473 n.14. Federal law governs the enforceability of forum selection and choice of law clauses. *Haynesworth v. The Corporation*, 121 F.3d 956, 962 (5th Cir. 1997), *citing M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1 (1972), and *Scherck v. Alberto-Culver Co.*, 417 U.S. 506, 518-21 (1974). Forum selection clauses are presumed to be valid. *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. at 9; *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 537-38 (1995). A party seeking to bar enforcement of a forum selection clause bears a heavy burden of demonstrating that the clause is unreasonable under the circumstances, i.e., "that the clause results from fraud or overreaching, that it violates a strong public policy, or that the enforcement of the clause deprives the plaintiff of his day in court.". *Bremen*, 407 U.S. at 12-13, 15, 18; *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33,

35 (5th Cir. 1997).

Allegations of conspiracy will not establish a prima facie case of personal jurisdiction; a plaintiff must show that each defendant individually, and not as part of a conspiracy, purposely established minimum contacts with Texas that would satisfy due process. *Guidry v. U.S. Tobacco*, 188 F.3d 619, 625 (5th Cir. 1999), *cited for that proposition, Moncrief Oil Intern.*, 332 S.W. 3d at 11 n.7; *Paolino v. Argyll Equities, LLC* , 401 F. Supp. 2d 712, (W.D. Tex. 2005), *citing Nat'l Industrial Sand Ass'n v. Gibson*, 897 S.W. 2d 769, 773 (Tex. 1995); *Alert 24 Sec., LLC v. Tyco Intern., Ltd.*, ___ F. Supp. 2d ___, Civ. A. No. 5:11-cv-21,, 2011 WL 4948981, * 3 (S.D. Tex. 2011)("″[A] conclusory allegation of conspiracy is insufficient as a matter of law to support an exercise of personal jurisdiction.").

Whether a court has personal jurisdiction over a nonresident defendant is a question of law for the court. *Moncrief Oil Inter. v. OAO Gazprom*, 414 S.W. 3d 142, 150 (Tex. 2012).

**Rule 8(a)**

Federal Rule of Civil Procedure 8(a) provides,

(a) **Claim for Relief.** A pleading that states a claim for relief must contain:

(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2) a short and plain statement of the claim

showing that the pleader is entitled to relief; and

(3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

The purpose of Rule 8(a) is "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The court must accept as true all facts the plaintiff alleges in support of its claims and must construe those allegations in the light most favorable to the plaintiffs. *Bowlby v. City of aberdeen, Miss.*, 681 F.3d 215, 219 (5th Cir. 2012). The factual allegations must "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.. "[D]etailed factual allegations" are not necessary, but the pleading must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the allegations "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level," the complaint is sufficient and "will survive a motion to dismiss." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012), *quoting Twombly*, 550 U.S. at 570.

**Rule 12(b)(6)**

When a district court reviews a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), it must construe the complaint in favor of the plaintiff and take all well-pleaded facts as true. *Randall*

*D. Wolcott, MD, PA v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011), *citing Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).  The plaintiff's legal conclusions are not entitled to the same assumption.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), *citing Bell Atlantic Corp. v. Twombly*, 556 U.S. 662, 678 (2007); *Hinojosa v. U.S. Bureau of Prisons*, 506 Fed. Appx. 280, 283 (5th Cir. Jan. 7, 2012).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* at 1965, *citing* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  "*Twombly* jettisoned the minimum notice pleading requirement of *Conley v. Gibson*, 355 U.S. 41 . . . (1957)["a complaint should not be dismissed for failure to state a claim

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"], and instead required that a complaint allege enough facts to state a claim that is plausible on its face." *St. Germain v. Howard,* 556 F.3d 261, 263 n.2 (5th Cir. 2009), *quoting In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). "'A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Montoya v. FedEx Ground Package System, Inc.*, 614 F.3d 145, 148 (5th Cir. 2010), *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard is not akin to a "probability requirement," but asks for more than a "possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 556.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court stated that "only a complaint that states a plausible claim for relief survives a motion to dismiss," a determination involving "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" under Rule 12(b). *Iqbal*, 556 U.S. at 678. The plaintiff must plead specific facts, not merely conclusory allegations, to avoid dismissal. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). "Dismissal

is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief . . . ." *Rios v. City of Del Rio, Texas*, 444 F.3d 417, 421 (5th Cir. 2006), *cert. denied*, 549 U.S. 825 (2006).

Dismissal under Rule 12(b)(6) is proper not only where the plaintiff fails to plead sufficient facts to support a cognizable legal theory, but also where the plaintiff fails to allege a cognizable legal theory. *Kjellvander v. Citicorp*, 156 F.R.D. 138, 140 (S.D. Tex. 1994), *citing Garrett v. Commonwealth Mortgage Corp.*, 938 F.2d 591, 594 (5th Cir. 1991). "A complaint lacks an 'arguable basis in law' if it is based on an indisputably meritless legal theory' or a violation of a legal interest that does not exist." *Ross v. State of Texas*, Civ. A. No. H-10-2008, 2011 WL 5978029, at *8 (S.D. Tex. Nov. 29, 2011).

As noted, on a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the Court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC,* 594 F.3d 383, 387 (5th Cir. 2010), *citing Collins*, 224 F.3d at 498-99; *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994). *See also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003)("the court may

consider . . . matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

"'[D]ocuments that a defendant attaches to its motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [its] claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000), *quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). By such attachments the defendant simply provides additional notice of the basis of the suit to the plaintiff and aids the Court in determining whether a claim has been stated. *Id.* at 499. The attachments may also provide the context from which any quotation or reference in the motion is drawn to aid the court in correctly construing that quotation or reference. *In re Enron Corp. Securities, Derivative & "ERISA" Litig.*, No. H-04-0087, 2005 WL 3504860, at 11 n.20 (S.D. Tex. Dec. 22, 2005). "Where the allegations in the complaint are

-23-

contradicted by facts established by documents attached as exhibits to the complaint, the court may properly disregard the allegations." *Martinez v. Reno*, No. 3:97-CV-0813-P, 1997 WL 786250, at *2 (N.D. Tex. Dec. 15, 1997), *citing Nishimatsu Const. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When conclusory allegations and unwarranted deductions of fact are contradicted by facts disclosed in the appended exhibit, which is treated as part of the complaint, the allegations are not admitted as true. *Carter v. Target Corp.*, 541 Fed. Appx. 413, 417 (5th Cir. Oct. 4, 2013), *citing Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974), *citing Ward v. Hudnell*, 366 F.2d 247 (5th Cir. 1966). *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, (7th Cir. 1996)("It is a well settled rule that when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations."); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)(when attached documents contain statements that contradict the allegations in the complaint, the documents control and the court need not accept as true the allegations contained in the complaint.").

### BIA's Alternative Motion to Stay

Without citing any legal authority, BIA asks the Court to stay or dismiss the instant federal court suit to allow the New York state court suit that BIA filed against KPMG to go forward.

It has long been established that "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Insurance Co.*, 517 U.S. 706, 715 (1996), *citing Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 813 (1976)("[F]ederal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given to them.'").   In *Colorado River*, 424 U.S. at 813-14,[11] the Supreme Court opined,

> Abstention from the exercise of federal jurisdiction is the exception, not the rule.   "The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.   Abdication of the obligation to decide cases can be justified under this doctrine only in exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188-89 . . . (1959).   "[I]t was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit merely because a State court would entertain it." *Alabama Pub. Serv. Comm'n v. Southern R. Co.*, 341 U.S. 341, 361 . . . (1953)(Frankfurter, J., concurring in result).

The Supreme Court has identified three categories of circumstances where abstention is permissible:   (1) "cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law," (*Railroad Commission of Tex. v. Pullman Co.*,

---

[11] *Quoted* in *Moses H. Cone Memorial Hosp.*, U.S. 1, 14 (1982).

312 U.S. 496 (1941)("*Pullman* abstention")), *Frank Mashuda Co.*, 341 U.S, at 189; (2) "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," e.g., scope of the eminent domain power of municipalities (*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)("*Burford* abstention"), *Louisiana Power & Light Co. v. City of Thobodaux*, 360 U.S. 25 (1859); and (3)"where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings" (*Younger v. Harris*, 401 U.S. 37 (1971)("*Younger* abstention")). *Colorado River*, 424 U.S. at 814-16. The instant case does not fall into any of the three categories of abstention.

Nevertheless dismissal may properly be based on other principles with concerns for "wise judicial administration," "conservation of judicial resources[,] and comprehensive disposition of litigation," which have given rise to the rule for actions concurrently pending in state and federal courts: generally, "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* at 817. Thus if the controversy in the two courts is simply an issue of personal liability not involving the possession or control of a *res*, each court may proceed

independently without reference to the other suit and if a judgment issues in one court, the other may apply principles of *res judicata.* On the other hand, under the *Colorado River* doctrine, only in the "most extraordinary circumstances" may the federal court stay its case where the state court's duplicative proceedings go forward based on considerations of wise judicial administration. Given the obligation of federal courts [to exercise the jurisdiction given them], and the absence of weightier considerations permitting the dismissal of constitutional adjudication and state-federal relations, the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." *Id.*

The first step and a necessary prerequisite in applying the *Colorado River* doctrine is to determine if the federal and state court actions are parallel or concurrent proceedings. "'Federal and state proceedings are 'concurrent' or 'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same.'" *Mosley v. Baker*, No. 10 Civ. 165(NRB), 2011 WL 2693513, *2 (S.D.N.Y. June 30, 2011), *quoting Colorado River*, 424 U.S. at 817, and *Marcus v. Quattrocchi*, 715 F. Supp. 2d 524, 537 (S.D.N.Y. 2010)"[L]awsusits are considered 'parallel' if

-27-

'substantially the same parties are contemporaneously litigating substantially the same issues in different forums.")).  The Fifth Circuit has permitted some flexibility in the parallelism requirement, finding that "there need not be applied in every instance a mincing insistence on precise identity of parties and issues."  "The critical determination is whether the non-federal litigation will dispose of all claims raised in the federal court action."  *Mosley*, 2011 WL 2693513, *2.

In the action in this Court and in the New York case, not only are the parties not identical, with only BIA being involved in both, here as a defendant and in New York as a plaintiff, but the causes of action are quite different.  The New York litigation will not dispose of all the claims in this federal action.  The Court concludes that they are clearly not parallel and concurrent.

Even if the actions were considered to be concurrent, the court must balance the six factors, with no one controlling to determine whether to stay or dismiss the concurrent federal suit in deference to a state action:  (1) "the court first assuming jurisdiction over property may exercise that jurisdiction to the exclusion of other courts"; (2) "the inconvenience of the federal forum; (3) "the desirability of avoiding piecemeal litigation"; and (4) "the order in which jurisdiction was obtained by the concurrent forums."  *Id*.  "[T]he decision whether to dismiss a federal action because of parallel state-court does not rest on a

mechanical checklist, but on careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction" in the federal suit. *Moses H. Cone Memorial Hosp.*, 460 U.S. at 16.

Both actions are *in personam* and there is no assumption by either this Court or the New York state court of any *res* or property, so this factor does not favor either.  As for the convenience of the federal forum for the parties, "[t]he inconvenience factor focuses on the 'physical proximity of the federal forum to the evidence and witnesses.''"  The contractual relationship between BIA and KPMG was centered in New York, where the suit was filed and most of the conduct occurred, and most of the witnesses and documents are in New York. KPMG "consented to jurisdiction and venue" in the New York Court, with the additional factors of the choice of New York forum clause and the choice of New York law clause in the contract at issue.  New York Complaint, #8-1, ¶ 3; Agreement for Services Independent Contractor, #12-5, ¶ 15.  Another factor, avoiding piecemeal litigation, does not work in favor of staying the federal action because the causes of action are distinctly different:  TBG's tortious interference with contract and with prospective contract and defamation *per se* claims against BIA in this Court, and BIA's claim of breach of the contract between BIA and KPMG against KPMG in the New York court. Last, the New York case was filed first and its proceedings are far

ahead of those in this Court.  Other factors that Courts have taken into consideration include which law provides the rule of decision. *Dali (USA), Inc. v. Lee*, No. 96 Civ. 3305 (MBM), 1996 WL 592723, at *5 (S.D.N.Y. Oct. 16, 1996).  Here since both states apply their own state law, the result does not favor either, since the New York case applies New York law in part because of the choice of law clause in the contract, and in this case, Texas law because the dispute occurred in this state.  Another factor, whether the federal plaintiff's rights will be protected in state court, is irrelevant since the causes of action and BIA's rights in this suit are so different from those in New York.  *Dali*, 1996 WL 592723, at *5.

Because the two actions are not parallel, because the balancing of the factors demonstrates that this is not an extraordinary case in which a federal action should be dismissed or stayed while the state court action is pending, and because of the presumption that the federal case should continue, the Court concludes that the *Colorado River* doctrine does not apply.

A final possible source for authority to stay or dismiss this federal case is *Landis v. North American Co.*, 299 U.S. 248 (1936). In *Landis*, Justice Cardozo, writing for the majority, rejected the proposition that "before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical."  299 U.S.

-30-

at 254.  He opined,

> [T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.  True, the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else.  Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.  Considerations such as these, however, are counsels of moderation rather than limitations upon power.

299 U.S. at 254-55 (citations omitted).  This discretionary power of a court "to stay proceedings before it in the control of its docket and in the interests of justice" is not unlimited.  *In re Beebe*, 56 F.3d 1384, No. 95-20244, 1995 WL 337666, at *2 & nn. 9 and 10 (5th Cir. May 15, 1995), *citing McKnight v.* Blanchard, 667 F.2d 477, 479 (5th Cir. 1982)(Before granting a stay pending resolution of another case, the court must carefully consider the time reasonably expected for the resolution of the other case.  Discretionary stay orders will be reversed when they are "immoderate or of an indefinite duration."); In *re Ramu Corp*., 903 F.2d 312, 318 (5th Cir. 1990)("The stay of a pending matter is ordinarily within the trial court's wide discretion to control the course of litigation, which includes authority to control the scope and pace of discovery."); and *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541, 545 (5th Cir. 1983)(Proper use of the court's broad

discretion to stay proceedings in the interest of justice and in control of their dockets "'calls for the exercise of judgment, which must weigh competing interests and maintaining an even balance.'")(*citing Landis*, 299 U.S. at 254-55).

Nevertheless because the parties before this Court and before the New York court are not identical, *Landis* does not authorize staying or dismissing the instant action.

**Limited Jurisdictional Discovery before Ruling on the Motion to Dismiss**

If the Court finds it lacks both general and specific jurisdiction, TBG asks the Court for an opportunity to conduct discovery to develop jurisdictional facts before the Court rules on BIA's motion to dismiss.

When a plaintiff requests discovery on personal jurisdiction facts, it must make a "preliminary showing of jurisdiction." *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005), *citing Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)("If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts . . . the plaintiff's right to conduct jurisdictional discovery should be sustained."). The decision to permit such discovery is within the court's discretion. *Id.* at 419. "[D]iscovery on matters of personal jurisdiction need not be permitted unless the motion to dismiss raises issues of fact. When

the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum v. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)(denying discovery where plaintiffs failed to "describe the discovery they contend should have been allowed, what facts they hoped to obtain from such discovery, or how it would produce information that would support specific jurisdiction"), *citing Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982); *Bonner v. Triple-S Management Corp.*, ___ Fed. Appx. ___, No. 16-40284, 2016 WL 4784030, at *1 (5th Cir. Sept. 3, 2016).  "A court may also deny jurisdictional discovery where the plaintiff only offers speculation as to jurisdiction" and "is waging a 'fishing expedition' into jurisdictional facts." *SGIC Strategic Global Inv. Capital, Inc. v. Burger King Europe GmbH*, Civ. A. No. 3:14-CV-3300-B, 2015 WL 41622599, at *6 (N.D. Tex. July 9, 2015)("When seeking discovery on personal jurisdiction, a plaintiff must make a 'preliminary showing of jurisdiction' before being entitled to such discovery.")(*citing Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 429 (5th Cir. 2005)).

### BIA's Motion for Dismissal (#8)

BIA represents that it is a Delaware corporation with its principal place of business in Boston, Massachusetts.  It is not authorized to do business in the State of Texas and is a "nonresident" as that term is defined in  17.041(2) of the Texas Practice & Remedies Code.

-33-

Nevertheless TBG conclusorily claims in its Original Petition at p. 2 (#1 under Notice of Removal) that

> BIA has, however, done business in Texas, as defined in § 17.042(1)-(3), Tex. Civ. Prac. & Rem. Code. BIA has contracted to do business, and has done business, with Texas residents, has contacted and hired employees in the State of Texas, and has enjoyed the benefits of doing business in Texas with Texas residents. BIA has committed a tort, in whole or in part, in the State of Texas . . . .

BIA maintains that TBG cannot satisfy its burden of establishing either general or specific jurisdiction over BIA in Texas.

Regarding general jurisdiction, BIA clearly lacks continuous and systematic contacts with, nor has it purposefully availed itself of the benefits and protections of, the State of Texas. It does not maintain an office or any employees, bank accounts, or other business operations in Texas. Affidavit of Amber Wert (#8, Ex. A) at ¶ 5. Between 2011 and 2015 only 0.7% of BIA's revenues has been obtained in providing services in Texas, and most of that was related to clients located outside of Texas who unilaterally requested that BIA's training sessions be delivered in Texas venues. *Id.* at ¶¶ 6,7,9. BIA had a commercial relationship with only a single client in Texas, accounting for 0.3% of its revenues. *Id.* at ¶7. In two of the last five years, BIA provided no services in Texas and had no other activities in the state. *Id.* at ¶6.

As for specific jurisdiction, BIA argues that this dispute has no nexus to Texas, but instead relates to a lawsuit filed by BIA in

-34-

New York against KPMG, LLP, a Delaware Limited Liability Partnership with headquarters in New Jersey, for breach of a contract that requires all disputes to be filed in New York and governed by New York law. *Id.* at ¶¶ 8,10.[12] BIA maintains that TBG cannot point to any conduct by BIA that gave rise to TBG's claims that involves, or in any way is directed to, Texas.

As to any allegation of libelous statements, BIA emphasizes that "the tort of libel is generally held to occur whenever the offending material is circulated." *Tabor, Chhlabra & Gibbs, P.A. v. Medical Legal Evaluations, Inc. ("Tabor"),* 237 S.W. 3d 762, 774 (Tex. App.--Houston [1st Dist.] 2007). That TBG claims its reputation suffered in Texas is not enough to establish specific jurisdiction over BIA because the charge is completely unrelated to TBG's claims against BIA here (when BIA filed suit against KPMG in New York, TBG was actively negotiating a new contract with KPMG to provide TBG's course to KPMG and BIA's New York suit allegedly interfered with existing and/or prospective contracts between TBG and KMPG; and the New York suit purportedly constituted defamation *per se*). Indeed, the dispute in this suit has no nexus to Texas.

Furthermore, BIA contends that it is BIA's New York case against KPMG that gives rise to this dispute. In *Tabor,* 237 S.W.3d at 775, in which a purported libelous letter was sent from

---

[12] A copy of BIA's complaint filed in the Supreme Court of New York against KPMG is attached to the Affidavit of Amber Wert. Ex. A (#8-1).

Mississippi to Pennsylvania and concerned an inadequate expert witness testimony given in a Mississippi court by a Texan, the court explained in relevant part,

> While some of [plaintiff's] alleged reputational injury may be suffered in Texas, Texas is not the focus of the allegedly defamatory statement.   Thus there is not a substantial connection between the defendants' alleged conduct and the state of Texas sufficient to warrant the exercise of specific jurisdiction.   *See [Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007)]. The mere fact that it was forseeable that an alleged libelous letter would have some effect in Texas is not a sufficient basis for an assertion of jurisdiction over a nonresident defendant.   *See [De Prins v. Van Damme*, 953 S.W.2d 7, 14 (Tex. App.--Tyler 1997, writ denied), *cert. denied*, 524 U.S. 904 (1998).]   The record contains no evidence of any marketing efforts directed to Texas by [defendants] in connection with the use of [the plaintiff's] services of the type that creates a nexus with the state of Texas sufficient to warrant the exercise of specific jurisdiction.

The basis of TBG's defamation claim is the allegations made in the New York suit between BIA and KPMG.   The alleged "offending material" was not "circulated" in Texas.   Thus there is no nexus between this claim and Texas to warrant the exercise of personal jurisdiction over BIA.

Nor is there any relationship to Texas to support BIA's claim in the instant suit for intentional interference with contract. The court in *Tabor*, 237 S.W.3d at 775-76, noted that a claim for intentional interference requires proof that the plaintiff was harmed "by conduct on the part of [defendants], which was either independently tortious or unlawful."   *Id.* at 776, *citing Wal-Mart Stores, Inc. v. Sturge*, 52 S.W.3d 711, 713 (Tex. 2001).   As was the

case in *Tabor*, BIA's allegedly defamatory statement is pleaded as an "independently tortious or willful and intentional act of interference."  The same conclusory allegations support both the claim for defamation and the claim for tortious interference with existing and prospective contractual relations, but are factually insufficient to support the exercise of specific jurisdiction in Texas in this suit.

In addition, argues BIA, the exercise of personal jurisdiction over BIA by a Texas court would offend traditional notions of fair play and substantial justice.  The contractual relationship between BIA and KPMG was centered in New York, where the suit was filed and most of the conduct occurred, and most of the witnesses and documents are in New York, while a New York forum is more appropriate to enforce an agreement governed by New York law.

In sum, BIA lacks sufficient minimum contacts to be subject to the jurisdiction of a court in the State of Texas, and it would be a violation of due process to subject BIA to litigation in Texas. Instead the Court should dismiss the claims against BIA under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over it.

Alternatively, argues BIA, claims against BIA should be dismissed under Rule 12(b)(6) because TBG failed to state a claim upon which relief can be granted.  The only illegal conduct of which TBG complains is BIA's filing the New York lawsuit against its former customer, KPMG, for breach of a series of agreements

that prevented any third party from providing training to KPMG that incorporated BIA's material.  TBG claims in the instant suit that BIA's suit against KPMG in New York constitutes tortious interference with contract, prospective contract, and defamation *per se.*  The result, contends BIA, is that TBG fails to state a claim for which relief can be granted for several reasons.

First, the filing of a lawsuit is absolutely privileged and cannot be the basis of civil liability.  As the court in *Front v. Khali*, 24 N.Y.3d 713, 718, 28 N.E.3d 15, 18 (2015), opined,

> Commencing with this Court's 1897 decision in *Ambiance v. Smith*, 153 N.Y. 214, 47 NE 265 (1897), we have held that absolute immunity from liability for defamation exists for oral or written statements made by attorneys in connection with a proceeding before a court "when such words and writings are material and pertinent to the questions involved" (*id.* at 219, 47 NE 265).  There we stated that to allow such statements to be a basis for a defamation action "would be an impediment to justice, because it would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society requires" (*id.* at 220, 47 N.S. 265).  We also noted that where an attorney's statements are "so needlessly defamatory as to warrant the inference of express malice," the privilege has been abused and "protection withdrawn" (*id.*).  Nearly a century later in *Park Knoll Assoc. v. Schmidt*, 59 N.Y.2d 205, 464 N.Y.S.2d 424, 451 N.E.2d 182 (1983), this Court held that relevant statements made in judicial or quasi-judicial proceedings are afforded absolute protection so that those discharging a public function may speak freely to zealously represent their clients without fear of reprisal or financial hazard (*see id.* at 209, 464 N.Y.S.2d 424, 451 N.E.2d 182).  The privilege attaches to such statements irrespective of an attorney's motive for making them (*see Wiener v. Weintraub*, 22 N.Y.2d 330, 331, 292 N.E.2d 667, 239 N.E.2d 540 [1968]).

Texas law is similar.  *See, e.g., James v. Brown*, 637 S.W.2d 914,

916-17 (Tex. 1982)(holding that communications during a judicial proceeding cannot serve as the basis for a civil action for libel or slander).

In addition, TBG fails to state a claim to recover damages for a claim for tortious interference with contract, the elements of which are "the existence of a valid contract between [the plaintiff] and a third party, the defendant's knowledge of that contract, the defendant's intentional procurement of the third party's breach of that contract without justification, and damages." *Notaro v. Performance Team*, 136 A.D.3d 997, 999, 26 N.Y.S.3d 201 (N.Y.A.D. 2 Dept. Feb. 24, 2016), *quoting MVB Collision, Inc. v. Allstate Ins. Co.*, 129 A.D.3d 1041, 1043, 13 N.Y.S.3d 137 (N.Y.A.D. 2015).  Texas law is similar.[13] *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002); *Holloway v.*

---

[13] "[O]nce a plaintiff makes out a prima facie case of tortious interference, a defendant can avoid liability by establishing some type of privilege or justification for its actions, such as the exercise of its own rights or its good faith assertion of rights it believes it has, even if that belief is mistaken." *U.S. Enercorp, Ltd. v. SDC Montana Bakken Exploration, LLC*, 966 F. Supp. 2d 690, 705 (W.D. Tex. 2013), *citing Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W. 3d 74, 77-78 (Tex. 2000).
Under New York law, "[t]he elements of a claim of tortious interference with contract are ;the existence of a valid contract between the plaintiff and a third party, defendant's knowledge of that contract, defendant's intentional procurement of the third party's breach of the contract without justification, actual breach of contract, and damages therefrom." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 207 (S.D.N.Y. 2008), *citing Lama Holding Co. v. Smith Barney, Inc.*, 88 N.Y. 2d 413, 646 N.Y.S. 2d 76, 668 N.E. 2d 1370 (1996).

*Skinner*, 898 S.W.2d 793, 795-96 (Tex. 1995)("Texas jurisprudence has long recognized that a party to a contract has a cause of action for tortious interference against any third person (a stranger to the contract) who wrongly induces another contracting party to breach the contract.").

Applying these elements here, BIA argues that TBG has not alleged any conduct by BIA that caused KPMG to breach any contract with TBG nor that KPMG has refused to enter into any contract with TBG because of BIA's conduct.  Nor has TBG alleged that it suffered any damages as a result of BIA's conduct.  Finally, the tortious interference claim depends on the validity of the defamation *per se* claim, which, as discussed, fails because the allegations in a judicial proceeding cannot form the basis of a tortious interference claim.  *Front v. Khalil*, 24 N.Y.3d 713, 718, 28 N.E.3d 15, 18 (2015); *James v. Brown*, 637 S.W. 2d at 916-17.

TBG's intentional interference claim also fails because TBG cannot show that BIA's actions were not justified.  It is black letter law that the exercise of one's own legal rights is sufficient justification to defeat a claim for tortious interference.  *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 835 N.Y.S.2d 530, 867 N.E.2d 381 (2007)(In response to a claim of contract interference, "a defendant may raise the economic interest defense--that it acted to protect its own legal or financial stake in the breaching party's business."); *Texas Beef Cattle Co. v.*

*Green*, 921 S.W.2d 203, 211 (Tex. 1996)("[T]he justification defense is based on either the exercise of (1) one's own legal rights or (2) a good-faith claim to a colorable legal right, even though that claim ultimately proves to be mistaken.  Thus, if the trial court finds as a matter of law that the defendant had a legal right to interfere with a contract, then the defendant has conclusively established the justification defense." (citations omitted)).

BIA contends that TBG fails to state a claim for defamation *per se* under New York law.  As noted, to state a claim for defamation *per se* requires the publication of an untrue statement to (1) charge a person with a serious crime; (2) to injure another in his or her trade, business or profession; (3) to claim that the plaintiff has a loathsome disease; or (4) to impute unchastity to a woman.  *Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 605 N.E.2d 344, 348 (1992); *Thompson v. Bosswick*, 855 F. Supp. 2d 76, 76-77 (S.D.N.Y. 2012).  Here the second category appears applicable.  Observing that "[d]efamation has long been recognized to arise from 'the making of a false statement which tends to 'expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society,'" the court opined that the plaintiff must allege a false statement about the plaintiff, published to a third party without authorization or privilege, through fault amounting to at least

negligence on [the] part of the publisher, and it must either cause special harm or constitute defamation per se as defined by *Restatement (Second) of Torts* § 558.[14] "Special harm means economic or pecuniary loss." *Thompson v. Bosswick*, 855 F. Supp. 2d 67, 76 (S.D.N.Y. 2012). "Special harm 'must flow directly from the injury to reputation caused by the defamation[,] not from the effects of the defamation." *Id.* When, as here, the statement is one tending "to injure another in his trade, business or profession, the statement must be made with reference to a matter of significance and importance for [the operation of the business], rather than a more general reflection upon the plaintiff's character or qualities." *Id.* at 77, *quoting Pure Power Boot Camp*, *Inc. v. Warrior Fitness Boot Camp*, *LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011). "The statement must be targeted at the specific standards of performance relevant to the plaintiff's business and must impute conduct that is 'of a kind incompatible with the proper conduct of the business, trade, profession or office itself.'" *Id., citing id.*

BIA contends that TBG has not alleged sufficient facts to

----

[14] Section 558 states, "To create liability for defamation there must be (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

support a claim for defamation per se.[15]  Furthermore, *McKinney's Consolidated Laws of New York Annotated* § 3016(a) requires that "[i]n an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally."  The complaint must also allege the time, place and manner of the false statement and to specify to whom it was made." *Dillon*, 261 A.D.2d at 38.  Truth is a complete defense to defamation claims.  *Id.* at 39.  Whether statements constitute fact or opinion, which is constitutionally protected, is a question of law for the court. *Id.* at 39.

TBG objects to the allegation that KPMG breached its contract with BIA by "permitting BAR Group to provide training sessions to KPMG employees 'incorporating' Foundational Interviewing Skills Materials and/or  Strategic Information Collection Materials . . . provided pursuant to those Agreements."  Pl.'s Orig. Petition (#1) at 6, ¶ IV.  The allegation that KPMG breached its contract with BIA does not allege any wrongdoing or improper conduct by TBG, and it is not a defamatory statement.  The claim that TBG's training incorporated BIA material in the New York complaint merely tracks the language in the relevant provisions of the controlling agreements that were purportedly breached and to which TBG was not

---

[15] Defamation *per se* is an exception to the requirement that a plaintiff must prove special harm. *Pure Power Boot Camp* at 550.

a party.   Today a suit claiming breach of contract is not a
remarkable or scandalous event and does not constitute defamation
*per se*.   Thus TBG's claims should be dismissed under Rule 12(b)(6).

Alternatively, BIA requests a stay pending resolution of the
earlier filed New York suit, which may moot this action.   A copy of
the New York petition is attached as Exhibit 1 to the Affidavit of
Amber Wert, attached to this motion.   A federal district court has
wide discretion in deciding whether to stay a case before it.
*McKnight v. Blanchard*, 667 F.2d 477, 479 (5th Cir. 1982)("A district
court, in its discretion, may stay proceedings before it for docket
control purposes or in the interests of justice.   Nevertheless ,
stay orders will be reversed when they are found to be immoderate
or of an indefinitie duration.").[16]   TBG's Original Petition in the
instant action shows that its claims here in a Texas federal court
are in retaliation for, and derivative of, the contractual claims
BIA has asserted against KPMG in New York state court.   BIA asserts
that TBG is using the New York suit as a strategic tool to obtain
leverage; TBG would not have filed this suit had BIA not sought to
pursue its legal right to file a breach of contract claim against
KPMG in New York.   The issues in the two suits overlap to a
substantial degree and are directly correlated,  and discovery

---

[16] This case is not on point because it deals with staying a
prisoner's civil case until he is released from prison, not
staying a federal case to allow an identical or similar state
court case with the same parties to go forward.

-44-

relating to TBG's claims and BIA's defenses would significantly overlap with the discovery already commenced in the New York suit. The success of TBG's claims here depends on the New York suit, as it is the sole basis of TBG's allegations.  The discovery, issues, and depositions would be duplicative.  Furthermore the New York case is far advanced compared to this one.

### TBG's Opposition (#12)

TBG and BIA are direct competitors offering *inter alia* seminars and training programs for auditors and other professionals on how to spot deception in others.  #12-2, Howell Affid. ¶ 3.  The basic principles of this training were developed by employees of the CIA and are in the public domain as well as the subject of *Spy the Lie:  Former CIA Officers Tell You how to Detect Deception* by Philip Houston, *et al*. (St. Martin's Press 2013).  The former BIA employees, who are now employees of TBG, each had a non-competition and a non-disclosure agreement with BIA, but BIA has not sued them or TBG for breach of those agreements.  Instead BIA sued its former client, KPMG, because in 2015 KPMG hired TBG, instead of BIA, to provide training to its employees.

TBG accuses BIA of having a tortious, vindictive scheme to put its former employees and TBG out of business by means of a sham, baseless, retaliatory suit against KPMG in New York.  BIA aims to interfere with TBG's relationship with KPMG and to preclude any other business that has ever been a client of BIA from hiring KPMG,

for fear it will also be sued by BIA because it dared to compete legally and legitimately against BIA.   BIA seeks to make this litigation more difficult, expensive, and time-consuming by suing TBG in New York, a jurisdiction with almost no connection to this cause of action.

TBG argues unpersuasively that BIA has continuous, systematic, substantial minimum contacts with Texas for this Court to have general jurisdiction over this case or that this suit arises out of and is related to defendant's contact with the forum.   TBG lists examples of minimum contacts that BIA omitted.   The Court observes that the asserted contacts are often limited to a single employee or are distant in time or are so vague as to offer little connection to the State of Texas.   "Vague and over-generalized assertions that give no indication as to the extent, duration, or frequency of contacts with the forum state are insufficient to support general jurisdiction." *Clemons v. WPRJ, LLC*, 928 F. Supp. 2d 885, 894 (S.D. Tex. 2013), *quoting Johnston v. Multidata Systems Intern. Corp.*, 523 F.3d 602, 610 (5th Cir. 2008).   TBG lists the following contacts: (1) Until 2009 BIA had a senior-level employee who resided in the State of Texas (The Court notes it was seven years before this suit was filed, dealt with a only a single employee whose residency in Texas may well have been fortuitous, and is unclear as to how long before that year and after it was that employee was living in Texas); (2) BIA required the employee

-46-

to maintain a BIA office in his home office in Denton, Texas (a single employee, a single office, with no indication of size, amount of business it did, other employees); (3) BIA deposited payroll funds into more than one bank account in Texas (which bank, for how many employees, how much, how often, how long?); (4) Through 2009, BIA employees, including its Texas employee and Texas contractor, taught at least 16 seminars for BIA in Houston and Dallas, Texas and charged BIA's customers between $18,000 and $22,000 for each full-day seminar (again, seven years before commencement of this suit, how many years before 2009 did it take to give 16 seminars, how many customers took a seminar, how long were they, and when); (5) BIA actively recruited and hired independent contractors in the State of Texas (when, how many, for how long, for what job); (6) A BIA representative taught at the FBI Undercover School in Dallas, Texas (just one individual, how long, how many times); (7) BIA actively recruited new customers in the State of Texas (how many, when, how long did they remain customers); (8) BIA continued to contract with and give seminars to KPMG employees until KPMG hired TBG in early 2015; TBG admits without discovery it does not have access to this information, but BIA admits it taught seminars in Texas at least through 2011 (when, how many, five years before filing of suit).

Examining these alleged contacts *in toto*, the Court finds that there is insufficient detail about the number of people involved,

frequency, and duration to find that they are "continuous and systematic," or even "substantial" enough to warrant the imposition of general personal jurisdiction over BIA, or whether instead these contacts were brief, sporadic, and attenuated.  These conclusory statements do not establish that BIA would reasonably have expected to be sued in Texas, no less that it conducted regular business in Texas.  The Court observes how minimal BIA's contacts with Texas are, compared with those in *Helicopteros* and other cases cited by the Court, which were still insufficient to support personal jurisdiction in Texas over the nonresident defendants.  The Court concludes that TBG fails to satisfy the burden of establishing general personal jurisdiction in Texas over BIA.

TBG also argues that the Court can assert specific jurisdiction over BIA because in addition to the listed contacts, BIA entered into a long-term, continuing relationship with Robert Bettes, a Texas resident.  Their employment agreement was entered into in 2007 and continued through 2009 (Attachments 1 and 2 to Bettes' Affid. (#12-1)), had no time limit, argues TBG, and would still be a continuing relationship with a Texas resident if Bettes had not voluntarily left BIA in 2009.  The Court finds that the very fact that Bettes chose to leave within two years, a very short period, undermines TBG's assertion of continuing obligations and a long-term relationship with a Texas resident as support for personal specific jurisdiction.  Moreover, Bettes is the sole

Texas-resident employee with whom TBG has asserted to have a relationship. Furthermore, this action is not limited to, and certainly not focused upon, the acts of Bettes.

TBG contends that there is a sufficient nexus between BIA's contacts with Texas and this lawsuit, which asserts that (1) BIA tortiously interfered with TBG's contract with KPMG and with its prospective contracts with KPMG and other companies with which BIA previously or presently contracted and (2) defamation. TBG claims that BIA interfered with TBG's business by filing a sham, meritless lawsuit against KPMG, now TBG's client. TBG claims that essential to the sham lawsuit, which it claims forms the basis of the instant suit, is that BIA's Texas employee, Bettes, was given access by BIA in Texas to BIA's purported proprietary information and taught BIA training sessions primarily in Texas to KPMG and others. Now BIA charges Bettes and others with incorporating the materials taught to BIA clients primarily in Texas into TBG's training programs for KPMG and claims that hiring TBG is therefore a breach of contract by KPMG. Bettes and others left BIA, formed a competing company, and entered into a contract with BIA's former client, KPMG. This case has many more contacts with the State of Texas than with any other state, insists TBG.

Last, BIA insists that it did not defame TBG in Texas, so the defamation claims have no nexus to Texas. TBG claims that without obtaining discovery it cannot know in which jurisdictions the

defamatory material was circulated, but TBG maintains that the
tortious interference claim creates a sufficient nexus to Texas to
support specific jurisdiction.   It argues that New York is only
connected to this suit because BIA filed its suit against KPMG
there.  BIA's tortious conduct was allegedly committed against TBG,
which has its main offices here in Houston, Texas.   BIA has
produced no evidence in support of its conclusory statement that
most witnesses and documents are located in New York and does not,
and cannot, specify which documents and witnesses are located
there.  At least two of TBG's witnesses are located in Texas, as
are TBG's offices and most of its documents.  There is no evidence
that KPMG's witnesses will not be found in one of its Texas
offices, rather than in a New York office.  TBG further argues that
since BIA is located in Delaware and Massachusetts, "it is
improbable that any of its witnesses and documents are located in
New York."  #12 at p. 11. TBG also argues that the choice-of-New-
York-law clause in the contract with KPMG is without significance
in this case because the point of the lawsuit was to strain the
relationship between KPMG and TBG and to prevent other clients of
BIA from contracting with TBG.  It further claims that while BIA as
plaintiff has sued KPMG in New York, there is no evidence that BIA
as a defendant is more amenable to suit in New York than in Texas.
Allowing this suit to proceed against BIA in Texas, where BIA had
an office, an employee, and contractor, conducted numerous training

programs and derived substantial revenues, and where TBG's main
offices are located, does not offend traditional notices of fair
play and substantial justice.

In response BIA reiterates that TBG's cause of action for
tortious interference with contract fails as a matter of law
because the statements made in its petition are absolutely
privileged. Claiming that this assertion was made to get around a
key provision of the contract between KPMG and BIA, TBG responds
that it is not the statements that are targeted, but the fact that
the lawsuit, as a whole, is a sham.[17]   Furthermore, the contract

---

[17] Among the defenses and privileges to defamation claims
under common law and statutes is the defense of truth.  The Texas
Supreme Court has

> interpreted [Texas Civil Practice and Remedies Code §
> 73.005] to require defendants to prove the publication
> was substantially true.  *Turner v. KTRK Television,
> Inc.*, 38 S.W. 3d 103, 115 (Tex. 2000).  Moreover
> statements that are not verifiable as false cannot form
> the basis of a defamation claim.  *Milkovich*, 497 U.S.
> at 21-22. . . . . Further the common law has recognized a
> judicial proceedings privilege since at least 1772 for
> parties, witnesses, lawyers, judges, and jurors.

*Neely v. Wilson*, 418 S.W. 3d 52, 62 (Tex. 2013).
     "Truth, even substantial truth, is a complete defense to
defamation." *Vincent v. Comerica Bank*, 2006 WL 1295494, at *7
(S.D. Tex. May 10, 2006), *citing Randall's Food Mkts. v. Johnson*,
891 S.W. 2d 640, 646 (Tex. 1995); *McIlvain v. Jacobs*, 794 S.W. 2d
14, 15 (Tex. 1990); *David L. Aldridge Co. v. Microsoft Corp.*, 995
F. Supp. 728, 741 (S.D. Tex. 1998)("The Fifth Circuit has
interpreted Texas law as requiring the plaintiff to prove falsity
as an element of a cause of action for defamation."). "Whether a
publication is capable of a defamatory meaning is initially a
question for the court." *Turner v. KTRK Television, Inc.*, 38
S.W. 3d 103, 114 (Tex. 2000)("[A]n allegedly defamatory
publication should be construed as a whole in light of the

between KPMG and BIA (#12-5, Ex. E, Taylor Affid. p. 6) provides,

> NON-EXCLUSIVITY.
> During the term of this Agreement, KPMG may engage the services of any individual or entity that competes with [BIA] or offers services similar to those offered by [BIA], and any such engagement shall not be considered a breach of this Agreement.

Despite the clear and unambiguous language of this provision, BIA, with the intent to harm TBG, still filed its meritless suit against KPMG for hiring TBG.

BIA objects that TBG does not adequately plead a claim for tortious interference because it does not assert any conduct of BIA that caused KPMG to breach any contract and because it does not allege any damages as a result of such conduct.  TBG disagrees, citing a wholly conclusory statement without any factual support in its Original Petition at p. 7 ("BIA's lawsuit against KPMG is a willful and transparent attempt to interfere with the existing contract and/or future contracts between TBG and KPMG and to cause

---

surrounding circumstances based upon how a person of ordinary intelligence would perceive it."), *citing Musser v. Smith Protective Servs.*, 723 S.W. 2d 653 (Tex. 1987).  If the publication is ambiguous, the jury decides its meaning.  *Id.*

Moreover, to BIA's correct assertion that statements made in a pleading in a lawsuit are absolutely privileged as a matter of law, TBG's response is that "it is not the specific assertions in the lawsuit that are the problem--it is that the entire lawsuit is a sham.  That admission demonstrates that TBG has failed to state a claim of defamation and defamations per se.

"The issue of whether an alleged defamatory matter is related to a proposed or existing judicial proceeding is a legal question to be determined by the court.  Communications subject to this privilege 'cannot constitute the basis of a civil action' and may not form a basis for civil liability."  *Aldous v. Bruss*, 405 S.W. 3d 847, 859 (Tex. App.--Houston [14th Dist.] 2013).

damage to TBG.  BIA's acts have caused damage to TBG for which BIA is liable.").  TBG now states that it has suffered at least $180,000 to date as a result of BIA's actions.  Bettes Affid., ¶ 16; Howell Affid. ¶8; Matko Affid. ¶11.

Last, BIA again insists that TBG's cause of action for tortious interference fails because BIA was justified in asserting its legal rights against KPMG.  TBG responds that BIA has failed to cite to legal authority as support for the proposition that one is justified in filing a meritless and sham lawsuit.  Regardless, that determination is for the finder of fact and should not be decided on a Rule 12(b)(6) motion.  As for stating a claim for defamation for which relief can be granted, BIA claims that its statements in its lawsuit against KPMG relating to TBG do not assert any wrongdoing by TBG and therefore cannot be defamatory, and that it was only tracking the language of the contract, a neutral assertion.  TBG responds that BIA is ignoring that TBG pleads that three employees of TBG were former BIA employees, that its instructional materials are proprietary and were learned by these three while employed by BIA, and that TBG incorporated BIA's proprietary materials in its training programs to KPMG.  Instead of neutral assertions, these are claims that members of TBG appropriated BIA's confidential and proprietary work for use in their competing businesses.  The fact that BIA has not sued TBG or its former employees demonstrates that these claims are false.

BAI's request that the Court stay this case until the New York action against KPMG is resolved should not be granted, argues TBG. Not only is the outcome predictable given the express language in the contract between KPMG and BIA, that it is not a breach of contract for KPMG to hire competing third parties to offer similar services, but the outcome of the New York suit does not dispose of this case in any way.  Even if BIA prevails in trial in New York, it would not show that the sole reason for, and intent behind, filing that suit was to injure TBG and prevent TBG from continuing to contract with KPMG or any other of BIA's clients.

TBG states that if the Court finds it lacks both general and specific jurisdiction, TBG requests an opportunity to conduct discovery to develop jurisdiction facts before the Court rules on BIA's motion to dismiss.

### BIA's Reply (#13)

Claiming that TBG's theory of personal jurisdiction is "skewed," directly contrary to the modern view of personal jurisdiction, and not recognized by any Circuit Courts of Appeals, BIA contends that TBG (1) has ignored recent Supreme Court decisions regarding minimum contacts necessary to subject a nonresident corporation to the general jurisdiction of a state court, (2) has based its theory of jurisdiction almost completely on events that occurred in 2009 or before, (3) does not demonstrate that its claims arise out of any action by BIA in Texas, necessary

to establish specific jurisdiction, and (4) fails to show sufficient contacts to establish systematic and continuous contacts of BIA with Texas for general jurisdiction.  Instead TBG asserts that because BIA had contact with Texas before 2009, it is subject to the jurisdiction of a federal court in Texas for this lawsuit filed by TBG solely in retaliation for the suit BIA filed in New York against a third party in late 2015.

BIA responds that TBG has conceded that it filed the suit in Texas only because BIA filed its suit against KPMG in New York. Citing #12 at 4 ("[I]t is not the specific allegations made in New York that are the basis of this lawsuit, but the fact that a sham lawsuit was brought at all.").  BIA maintains that the instant suit's purpose is to impede BIA's right to pursue its contractual rights, that its claims in the New York suit are well founded, and that BIA cannot be held liable to TBG merely for filing a lawsuit, regardless of the strength of its merits.  BIA points out that TBG failed to address the absolute privilege protecting the filing of a lawsuit to vindicate contractual rights, that TBG conceded that its defamation claim is based on the fact that the lawsuit was filed and does not depend on the allegations made by BIA in Texas, and that KPMG has not breached its contract with TBG.  TBG's concession is fatal to both its defamation claim and its tortious interference with future business relationships claim, neither of which is pleaded to the level required by Rule 8.

-55-

BIA challenges many factual allegations in TBG's Response as untrue and as not supported by any competent evidence, or as contrary to the undisputed evidence, or in dispute, and lists them in Appendix A to #13. BIA has submitted competent and unchallenged proof that the claims asserted by TBG against BIA do not arise out of any specific conduct of BIA in Texas and that BIA lacks sufficient contacts with the State of Texas to subject BIA to the general jurisdiction of Texas courts. It is TBG's burden to prove that BIA is subject to jurisdiction in Texas courts, and not BIA's to prove it is not. *Luv N' Care*, 438 F.3d at 469; *AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 784 (S.D. Tex. 2012)("When a defendant files a motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of demonstrating that the court has personal jurisdiction over the defendant.").

In its motion, BIA argued, and TBG did not contest, that BIA's presence in Texas over the last few years (1) has been minimal, (2) has been predominantly the result of decisions made by its customers who are not Texas residents, but who have occasionally asked BIA to give one-day training seminars at locations in Texas, and (3) has no relation to the claims made by TBG based only on BIA's conduct in filing the New York lawsuit. TBG argued that the Court may look back at least seven years for facts supporting

jurisdiction.[18]   "General jurisdiction can be assessed by evaluating contacts of defendants with the forum over a reasonable number of years, up to the date the suit was filed."   *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 610 (5th Cir. 2008), *citing Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)).   This suit was filed in state court on January 18, 2016. #1, Notice of removal at p. 1, and Plaintiff's Original Petition. TBG urges the Court to ignore events of the last seven years and focus on what happened eight to ten years ago, contrary to due process limitations on personal jurisdiction and insufficient to subject BIA to the jurisdiction of Texas courts.

TBG claims this Court has specific personal jurisdiction over BIA based on its employment relationship with Bettes, a Texas resident, from 2007-09.   BIA emphasizes, correctly, that TBG causes of action have nothing to do with Bettes' employment nearly ten years ago, and therefore do not support specific jurisdiction.   As noted, TBG has admitted that it filed this action because it believes the New York suit is a sham and that BIA's decision to file a breach of contract suit against KPMG in 2015 is unrelated to the residence of Bettes in 2007.

---

[18] The Court agrees with BIA that the two cases TBG cites for the proposition that the Court may look back at least seven years for contacts do not support that proposition:   *Wilson v. Belin*, 20 F.3d 644, 650 (5th Cir. 1994), cert. denied, 513 U.S. 930 (1994), and *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 372-73 (5th Cir. 1987).   They do not establish any specific number of years.

As for general jurisdiction, not only has BIA lacked any significant presence in Texas since 2009, but, as opined in *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 927, 919 (2011), "A corporation's 'continuous activity of some sort within a state is not enough to support the demand that the corporation be amendable to suits unrelated to that activity'"; "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them **essentially at home in the forum State.**"[emphasis by this Court]).

In addition in *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 755, 758 (2014)(specific jurisdiction requires that the suit "arose out of or relate to the defendant's [specific] contacts with the forum)(*quoting Helicopteros*, 466 U.S. at 414 n.8), the Supreme Court refined its concept of general jurisdiction and reduced its role "to occupy a less dominant place in the contemporary scheme," while increasingly focusing on the relationship among the defendant, the forum, and the litigation, essential to specific jurisdiction and now "the centerpiece of modern jurisdiction theory." Under *Daimler*, for a court to exercise general jurisdiction over a foreign corporation, that corporation must be "at home" in the forum, i.e., "instances in which the continuous corporate operations within a state [are] so substantial and of

such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities." 134 S. Ct. at 761, *quoting International Shoe v. Washington World*, 326 U.S. 310,318 (1945)). Only in exceptional cases, a corporation may be "at home" in places outside of its place of incorporation or principal place of business." *Id.* at 761 n.19. Such a determination, however, "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide," because a corporation operating in numerous fora could "scarcely be deemed at home [or expected to be haled into court] in all of them." *Id.* at 762 n.20.

TBG now responds to BIA's motion to dismiss the tortious interference cause of action by claiming that in contract negotiations with KPMG, TBG was forced to give discounts of $180,000. BIA observes that there could be a number of reasons why KPMG was able to obtain a more favorable contract now than before, but even assuming that TBG could read KPMG's corporate mind and discover why KPMG sought those monetary terms, it is very doubtful that "discounts" constitute damages recoverable from BIA.

TBG does not respond to the element of tortious interference requiring defendant to intentionally procure the third party's breach of the contract without justification. *Notaro*, 2016 WL 717116, at *1. TBG's evidence demonstrates that KPMG did not breach its contract with TBG, but KPMG has now signed a new

contract that is less favorable to TBG.  As a matter of law there was no breach of the TBG contract as a result of the suit filed by BIA, and the claim for tortious interference should be dismissed.

Describing TBG's claim of tortious interference with future contracts as "as paradigm of vagueness and conclusion," BIA insists it is insufficient for a number of reasons:  (1) there is no factual allegation that BIA's conduct actually caused any interference with potential business relationships; (2) TBG has not cited any authority that filing a breach of contract suit gives a non-party to the contract a cause of action sounding in tort against the party that filed the suit[19]; and (3) TBG has failed to make any factual allegations about what potential business or future contracts it alleges are the subject of tortious interference by BIA.  Instead its conclusory allegations do not show that TBG is entitled to relief.

Should the Court find that dismissal in not appropriate, BIA reiterates its request for a stay of this case until the New York case is resolved.  This Court, in the interests of comity, should

---

[19] TBG concedes that it has not found a case factually identical to his scenario, but contends that "BIA cannot plausibly deny that a lawsuit of any nature filed by a plaintiff for the sole or primary purpose of harming a competing company--even though the competition is legal and legitimate--falls squarely within the elements of tortious interference with contract and with prospective business relationships."  BIA bears the burden of proof on its affirmative defense of privilege or justification, but they are not relevant to whether TBG had adequately pleaded these claims.

not seize the authority to rule on the merits of a claim not before
it.  Moreover, if this Court finds that BIA's New York case is a
sham, KPMG would argue collateral estoppel or *res judicata* in the
New York case, leading to an appeal in New York over whether a
Texas federal court can properly rule on the merits of a New York
state claim pending in a New York state court.  Last, judicial
efficiency supports the proposition that a New York state court is
in a better position to make rulings on the substantive law of New
York.

### TBG's Sur-reply (#16)

With leave from Judge Stacy (#15), TBG filed a sur-reply
arguing that the Court should not consider the affidavits of Howell
and Matko, attached to the affidavit of Robert Bettes, in the
Appendix to BIA's Reply (#12), because these documents are subject
to a confidentiality agreement between Bettes and BIA, also
attached.  TBG asserts that "BIA unequivocally concedes that this
Court has specific personal jurisdiction over it" because
"according to a number of cases cited and relied upon by BIA,
continuing contractual obligations to the resident of a forum state
establish specific jurisdiction in that state."  #26 at p. 2.,
citing *Central Freight Lines, Inc. v. APA Transport Corp.*, 322 F.2d
376 (5th Cir. 2003), citing *Traveler's Health Ass'n v. Virginia ex
rel. State Corp. Com'n*, 339 U.S. 643, 647 (1950)(upholding personal
jurisdiction based on the fact that defendant created "continuing

obligations" between himself and a resident of the forum).  As in *Central Freight Lines*, BIA entered into an ongoing employment and non-disclosure agreement with Texas resident Robert Bettes, creating obligations that exist until this day.  Like the defendant in *Central Freight Lines,* BIA knowingly aligned itself with a resident of Texas, required Bettes to work out of his home in Denton Texas, and anticipated and required much of Bettes' work to be performed at their customers' Texas office locations.  Thus it was foreseeable that hiring Bettes would result in BIA business activity in the State of Texas.  It was not required that BIA be physically present in Texas since it purposely directed actions toward a resident of Texas, creating continuing obligations to that Texas resident and required that Texas resident to conduct extensive business activities in the State of Texas, which would generate hundreds of thousands of dollars of revenue for BIA. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985).[20]

_____

[20] In *Burger King*, 471 U.S. at 476, Justice Brennan wrote for the majority,

Jurisdiction . . . may not be avoided merely because the defendant did not *physically* enter the forum state. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted.  So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have

In response to BIA's assertion that the claim asserted by TBG "against BIA has nothing to do with the employment of Mr. Bettes almost a decade ago," TBG disagrees and maintains that BIA's contacts with Bettes and the State of Texas are not only related, but integral, to the causes of action asserted by TBG here.  To keep TBG from competing against it, BIA has sued a major former client because Bettes and others are also former employees of BIA and BIA wants to keep Bettes from contracting with KPMG or any other company.  BIA hired Bettes in Texas, shared its seminar and teaching materials with Bettes in Texas, required Bettes to office in Texas, sent Bettes to teach a number of seminars in Texas, and required Bettes to help recruit BIA employees and independent contractors in Texas.

TBG again contends that if it has not established general jurisdiction over BIA in Texas, it should be allowed limited discovery to ascertain jurisdictional facts since 2009 if the Court finds that earlier years are too distant.  TBG asks the Court to recognize that BIA admitted that it continued to work in Texas from 2011 through 2015 and to give KPMG seminars at undisclosed locations through 2015.

---

consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*In accord, Searcy v. Pares Resources, Inc.*, 496 S.W. 3d 58, 88 (Tex. 2016).

Arguing that BIA wrongly contends that TBG's cause of action for tortious interference cannot survive in the absence of a showing that KPMG breached its contract with TBG, TBG objects to BIA's use of New York law ("the defendant must intentionally procure the third party's breach of contract without justification" (Reply at p. 14)) for that tortious interference claim against a company headquartered in Texas and maintains that New York law has no connection to this case. In contrast, the elements of tortious interference with contract under Texas law are "(1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages." *Prudential Ins. Co. v. America v. Financial Review Services, Inc.*, 29 S.W. 3d 74, 77 (Tex. 2000). TBG maintains that it is unnecessary to show that its contract with KPMG was intentionally and legally breached, only that BIA intentionally interfered with the contract and caused actual damage to TBG. TBG has shown by affidavits that the discounts required by KPMG to continue to do business with TBG were a direct result of KPMG's costs to defend the lawsuit filed by BIA, i.e., the reduction in the contract price as a result of BIA's actions is both an interference with existing contract and an actual loss to TBG. Bettes Affid. ¶16; Howell Affid. ¶8; Matko Affid. ¶11.

TBG also insists that it has stated a claim for tortious

interference with prospective business relationships in alleging that the pending sham lawsuit against KPMG made it impossible for TBG to negotiate contracts with new clients.  Since TBG has alleged that in the New York lawsuit the members of TBG who were formerly employed by BIA have improperly incorporated BIA's proprietary materials into its teaching materials, no new client will risk being a party to the claimed improper actions of TBG.  Thus it has stated all the elements of such a claim:  (1) there is a reasonable probability that TBG could have contracted with a number of other companies; (2) the filing of the lawsuit against KPMG, while not illegal, is an abuse of process; (3) BIA would clearly know and intend that suing its former client for hiring TBG would interfere with TBG's ability to do business; and (4) TBG has suffered actual harm.

Next TBG insists it has stated a claim for defamation.  TBG now claims that it has never been TBG's contention that BIA committed defamation by filing a sham lawsuit.  It claims that its defamation claim is that BIA communicated outside of the lawsuit with KPMG to claim the TBG misappropriated and used its proprietary and confidential information.

Finally TBG opposes a stay as premature because KPMG has filed a motion in the New York case to abate that suit and it has been argued and taken under advisement, long before BIA filed its motion for stay.  Moreover a stay is nonsensical because TBG is not a

party to the New York action and does not appear to be amenable to service in New York, so the New York Court would have to decide what is before this court, i.e., whether TBG incorporated into its training sessions KPMG BIA's Strategic Information Collection Materials without having TBG before the court.  The New York judge in a hearing in New York (transcript Ex. A to #16 at p. 13, ll. 4-7) has declared, "If that is an issue the Texas court is going to decide, I don't want to decide it.  I am not going to make a decision that is going to effect [*sic*] a company that is not in this lawsuit."

Finally, TBG points out that BIA has not presented any admissible evidence to dispute TBG's factual allegations, but only statements of counsel and unsworn testimony of witnesses.

### BIA's Last Reply (#17)

Also with leave of Judge Stacy, BIA's "last reply" asserts that TBG's Sur-Reply fails to address any of the substantive jurisdictional issues set forth previously by BIA, but makes new, ineffective arguments, belatedly requests discovery, and rehashes its old arguments.

BIA insists that a single factual statement about Bettes' breach of his confidentiality agreement with BIA does not subject BIA to the personal jurisdiction of Texas courts as a continuing contractual obligation to the resident of the forum state.  BIA has not brought any claim for relief against Bettes, who is not a party

-66-

to this action and the propriety of whose conduct is not before the
Court, and there is no mention of Bettes and his confidentiality
agreement in the Original Petition.  Specific jurisdiction requires
that the lawsuit arise out of or be related to the defendant's
contact with the forum.  *AllChem*, 878 F. Supp. 2d at 786-87.  The
claims here do not arise out of Bettes' conduct, which was
unilateral and which occurred *after* TBG filed this suit, so there
is no specific jurisdiction based on it.  The Court agrees.
Instead TBG's claims are based solely on the New York lawsuit filed
by BIA.

BIA insists that additional discovery is both unnecessary and
unduly burdensome.  TBG has not made a preliminary showing of
jurisdiction, nor identified the discovery needed, what it would
uncover, or how the discovery would support its claim that BIA is
subject to the personal jurisdiction of Texas courts.  The Court
agrees here, too.

The arguments on whether TBG has stated a claim are merely
rehashes of earlier submissions.  The one new claim, that BIA's
suit against KPMG in New York is an abuse of process, does not meet
the elements of well established Texas law regarding such a claim:
"(1) that the defendant made an illegal, improper, perverted use of
the process; (2) that the defendant had an ulterior motive or
purpose in exercising such illegal, perverted, or improper use of
process; and (3) that damage resulted to the plaintiff from the

irregularity." *Detenbeck v. Koester*, 886 S.W. 2d 477, 480 (Tex. App.--Houston [1st Dist.] 1994).   BIA emphasizes that it has not sued TBG nor had any process issued against TBG, so TBG lacks standing to assert an abuse of process claim against BIA. Furthermore, "[t]o constitute an abuse of process, the process must be used to accomplish an end which is beyond the purview of the process, and which compels a party to do a collateral thing which he would not be compelled to do. . . .  When the process is used for the purpose for which it is intended even though accompanied by an ulterior motive, no abuse of process occurs." *Id.*, *citing Blackstock v. Tatum*, 396 S.W. 2d 463, 468 (Tex. App.--Houston [1st Dist.] 1965, no writ)("As we understand it, abuse of process consists not in the filing and maintenance of a civil action, but rather in the perversion of some process issued in the suit after its issuance.  The process referred to in the cases is not in the filing and maintenance of a civil action, but in the wrongful use of a writ issued in the suit.  The writ or process must be used in a manner or for a purpose for which it is not by law intended and the use must interfere with the person or property of another.

TBG has not pleaded that BIA improperly used any process issued in the New York action, but only that BIA filed and is maintaining the action.  TBG's last-minute attempt to change its theory of recovery does not cure the incurable defects in its pleading.

TBG also fails in its attempt to save its defamation claim by alleging as defamation per se that "BIA intended to harm TBG in its business and its reputation, to expose TBG to contempt, ridicule and financial injury, and to impeach TBG's honesty and integrity." BIA points out that neither Texas nor New York law recognizes a claim for defamation *per se* on any of those grounds.  Instead, under both, defamation *per se* requires the publication of an untrue statement (1) charging a person with a serious crime; (2) that tends to injure another in his or her trade, business or profession; (3) that the plaintiff has a loathsome disease; or (4) imputing unchastity to a woman. *Liberman v. Gelstein*, 80 N.Y. 2d 429, 435, 605 NE 2d 344, 348 (1992); *In re Lipsky*, 460 S.W. 3d 579, 596 (Tex. 20150.  TBG does allege that BIA intended to harm TBG in its business, but not that any statement by BIA tended to injure another or that TBG had actually been harmed by any of BIA's statements.  TBG's intent allegation fails to state a claim for defamation per se.

As for a stay of this action, BIA highlights the fact that even though KPMG's motion to dismiss has been pending for months in the New York Court, that judge has not stayed the case nor limited discovery, and has indicated that she would not do anything that might prejudice a nonparty to the suit.  While TBG's submission of a partial transcript of that hearing suggests that TBG has interests in the New York suit that need to be protected, BIA

disagrees and states that the New York judge can resolve the contract action between BIA and KPMG without finding any wrongdoing by TBG.  More to the point, TBG can move to intervene in that suit to protect its interests; instead it is using the existence of two suits to force BIA to litigate in two courts.

### Court's Decision

This Court has not held a hearing and has restricted its personal jurisdiction review to the affidavits and discovery materials submitted as attachments to the motion and the briefs during the quite extensive dispute by the parties.  Thus TBG must present a *prima facie* case that this Court has personal jurisdiction over BIA.  The Court construes all disputed and uncontroverted facts in favor of TBG.  Nevertheless, there is little in the way of factual allegations and many vague and conclusory statements in its briefs.  After a careful review the Court concludes that TBG has failed to satisfy its burden to show that this Court has personal jurisdiction over the instant suit.

The Court agrees with BIA that BIA lacks continuous and systematic contacts with Texas and that it has not purposefully availed itself of the benefits and protections of Texas to warrant personal jurisdiction over it in that state.  Even eight to ten years ago when its had it most contacts with Texas, during the short two-year employment of Bettes from 2007-2009, he was the sole BIA employee in Texas, Bettes' office in his home was the sole BIA

office in Texas, and his was the only paycheck that BIA specifically alleges was sent to a Texas bank. The short, occasional seminars BIA offered in Texas at the request of nonresident clients over years are not substantial, no less continuous and systematic contacts of which BIA purposefully availed itself of the benefits and protections of Texas laws. Compared with the far greater number and durability of the contacts in *Helicoperos* and other cases cited by the Court which were determined to be insufficient to support personal jurisdiction in Texas, these are woefully inadequate for such a purpose. See pp. 1-12 & n.8 of this Opinion and Order.

A court's exercise of specific jurisdiction is appropriate only when the non-resident defendant's contacts with the forum state arise from, or are directly related to each cause of action. *Helicopteros*, 466 U.S. at 414 n.8; *Gardemal v. Westin Hotel*, 186 F.3d 588, 592 (5th Cir. 1999). As BIA has shown in great detail, TBG's claims against BIA in this suit (tortious interference with existing and prospective contract and defamation *per se*) were not directed toward Texas, but were focused on alleged wrongdoing in New York, and evidenced by allegations in BIA's New York suit against KPMG, contractual relationship (based on separate contracts than those at issue in this Court) between the two parties arose, and their contract contained a New York forum selection clause and choice-of-New-York-law clause. Despite TBG's efforts to obfuscate

the fact, the instant suit did not arise out of Bettes' contacts with Texas, which took place long before this suit was filed, which did not name Bettes as a party, and in which Bettes is not only not the focus, but a "bit player."

Regarding TGB's request for limited discovery of jurisdictional facts before the Court rules on BIA's motion to dismiss, the Court finds that TGB has not met the "preliminary showing of jurisdiction." *Fielding*, 415 F.3d at 429.  TGB has When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Kelly v. Syria Shell Petroleum v. B.V.*, 213 F.3d 841, 855 (5th Cir. 2000)(denying discovery where plaintiffs failed to "describe the discovery they contend should have been allowed, what facts they hoped to obtain from such discovery, or how it would produce information that would support specific jurisdiction. *Wyatt*, 686 F.2d at 284.  "A court may also deny jurisdictional discovery where the plaintiff only offers speculation as to jurisdiction and where the plaintiff is waging a 'fishing expedition' into jurisdictional facts." *SGIC Strategic Global Inv. Capital, Inc. v. Burger King Europe Gmbh*, 2015 WL 41622599, at *6 (N.D. Tex. July 9, 2015)("When seeking discovery on personal jurisdiction, a plaintiff must make a 'preliminary showing of jurisdiction' before being entitled to such discovery.")(*citing Fielding v. Hubert Burda Media, Inc*., 415 F.3d 419, 429 (5th Cir. 2005)).  Instead TBG has only offered speculation

as to jurisdiction" and "is waging a 'fishing expedition' into jurisdictional facts." *SGIC Strategic Global Inv. Capital, Inc. v. Burger King Europe GmbH,* Civ. A. No. 3:14-CV-3300-B, 2015 WL 41622599, at *6 (N.D. Tex. July 9, 2015).   Thus the Court denies the motion for limited discovery of jurisdictional facts.

TBG has also filed a motion for leave to amend, well after the personal jurisdiction issue was raised on April 4, 2016 and then extensively briefed, giving TBG clear notice of a potential fatal deficiency, and only on the last day that the docket control schedule permitted the filing of an amended complaint.   Discovery was still open until January 30, 2017, but TBG apparently failed to garner any new jurisdictional facts in that almost nine-month period.   The Court denies the request for leave to amend based on futility and undue delay.   TBG's proposed First Amended Complaint (Ex. to #18) does not provide any new jurisdictional facts nor state a *prima facie* case of personal jurisdiction over BIA in Texas and thus does not cure the deficiency.   In fact, the motion clearly states, "The purpose of the amendment is, primarily, to comply with federal formatting and pleading requirements," which seemingly ignored the personal jurisdiction issue despite the dispute.   #18 at p.1.   "Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted."   *DeLoach v. Woodley*, 405 F.2d 496, 497 (5th Cir. 1968), *citing Foman v. Davis*, 371 U.S. 178 (1962).   Since the Court denies additional discovery,

-73-

the motion for leave to amend is denied as futile.

The parties do not address the question what legal source authorizes a federal court to stay or dismiss itself to allow a state court action, with different parties and different issues, to go forth. The Court's research, discussed *supra*, has found none and accordingly denies BIA's motion to stay or dismiss this suit.

In sum, the Court concludes that it lacks personal jurisdiction over BIA, and for that reason this case must be dismissed without prejudice.

Because the Court lacks personal jurisdiction over BIA, it does not reach the motion to dismiss under Rule 12(b)(6). Accordingly, for the reasons state above, the Court

ORDERS that BIA's motion to dismiss for lack of personal jurisdiction over BIA under Rule 12(b)(2) is GRANTED.

SIGNED at Houston, Texas, this  22nd  day of  February , 2017.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE

-74-